## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PHILLIP DEAN HANCOCK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. CIV-23-873-G** |
| | ) |
| **VICKI BEHENNA, Oklahoma** | ) |
| **County District Attorney, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

Plaintiff, Phillip Dean Hancock, an Oklahoma death row inmate, is scheduled to be executed on November 30, 2023. On October 4, 2023, Plaintiff filed a civil rights complaint alleging that the withholding of certain physical evidence deprives him of various constitutional rights. *See* Compl. (Doc. No. 1). Per the Court's order for expedited briefing, on October 10, 2023, Plaintiff filed a motion for preliminary and permanent injunctive relief. *See* Pl.'s Mot. (Doc. No. 11). Defendants have filed their responses (Doc. Nos. 15, 16), and Plaintiff has filed a reply (Doc. No. 21). Having reviewed the parties' submissions, the Court finds a hearing is not required and makes the following determinations.

## I.    Plaintiff's Claims

Under the Oklahoma Post-Conviction Procedure Act, a person convicted of a crime may seek postconviction relief upon the conviction or sentence. *See* Okla. Stat. tit. 22, §§ 1080-1089. Under a separate statute, the Oklahoma Postconviction DNA Act, certain convicted persons may seek DNA testing and present the results of that testing as a basis

for various types of relief, including vacation of conviction or discharge from custody. *See id.* §§ 1373-1373.7. In the instant action, Plaintiff challenges the constitutionality of the Postconviction DNA Act both on its face and as authoritatively construed by the Oklahoma Court of Criminal Appeals ("OCCA"). Plaintiff names as defendants Vicki Behenna, Oklahoma County District Attorney; Wade Gourley, Chief, Oklahoma City Police Department; and Eric Pfeifer, Chief, Oklahoma Office of the Chief Medical Examiner. Plaintiff brings suit against all defendants in their official capacities, alleging each defendant either opposes his request for DNA testing or has custody and/or control of the physical evidence sought to be tested and is denying him access to such evidence. *See* Compl. ¶¶ 15-17.

Plaintiff asserts three claims pursuant to 42 U.S.C. § 1983. The first is a denial of procedural due process under the Fourteenth Amendment, wherein Plaintiff challenges the Oklahoma courts' construction of the Postconviction DNA Act's requirement that a court must make a finding regarding "favorable results" to order the requested DNA testing. Okla. Stat. tit. 22, § 1373.4(A)(1); *see* Compl. ¶¶ 42, 49-61. Plaintiff additionally brings a facial challenge contending the Postconviction DNA Act violates due process because it predicates a court's order of DNA testing upon a finding that the request for such testing "is made to demonstrate the innocence of the convicted person." Okla. Stat. tit. 22, § 1373.4(A)(2); *see* Compl. ¶¶ 62-64; *see also* Okla. Stat. tit. 22, § 1373.2(A). Plaintiff's second and third claims allege that Oklahoma's statutory procedure for obtaining access to DNA testing violates his right to access the courts under the First and Fourteenth Amendments and his Eighth Amendment right to be free from cruel and unusual

punishment.  *See* Compl. ¶¶ 67-73.

Plaintiff seeks (1) a declaratory judgment that the Postconviction DNA Act as applied by the OCCA is unconstitutional, and (2) a preliminary and permanent injunction requiring Defendants to allow access to the evidence for testing.  *See id.* ¶¶ 11, 74; Pl.'s Mot. at 8-16.  The Court now addresses Plaintiff's Motion for Preliminary and Permanent Injunction.

## II.  <u>Jurisdiction</u>

Plaintiff's claims are asserted under 42 U.S.C. § 1983, which is the proper vehicle for raising a postconviction claim for DNA testing.  *See* Compl. ¶¶ 10, 12; *Skinner v. Switzer*, 562 U.S. 521, 525, 534 (2011).  To establish Defendants' liability under § 1983, Plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  The Court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. §§ 1331 and 1343.

## III.  <u>Background</u>

### A.    **Procedural History**

In 2004, Plaintiff was tried before a jury in the District Court of Oklahoma County and found guilty of two counts of Murder in the First Degree for the deaths of James Lynch and Robert Jett.  *See State v. Hancock*, No. CF-2002-3562 (Okla. Cnty. Dist. Ct.).  The jury convicted Plaintiff to death on both counts, having found four aggravating circumstances for each murder: (1) he was previously convicted of a felony involving the use or threat of violence to the person; (2) he knowingly created a great risk of death to more than one

person; (3) a probability existed that he would commit criminal acts of violence that would constitute a continuing threat to society; and (4) the murders were especially heinous, atrocious, or cruel.  Compl. ¶ 37; Pl.'s Mot. Ex. 4, Trial Ct. Findings of Fact & Concls. of Law (Doc. No. 11-4) at 2-3.

Plaintiff appealed his convictions and sentences to the OCCA.  The OCCA affirmed in relevant part, and the United States Supreme Court denied a writ of certiorari.  *See Hancock v. State*, 155 P.3d 796 (Okla. Crim. App. 2007); *Hancock v. Oklahoma*, 552 U.S. 1029 (2007).  Petitioner also sought postconviction relief, which the state courts denied. *See Hancock v. State*, No. PCD-2004-1265 (Okla. Crim. App.).

Plaintiff then challenged the constitutionality of his conviction and sentence in federal court through a petition for writ of habeas corpus.  *See Hancock v. Workman*, No. CIV-08-327-F (W.D. Okla.).  This Court's denial of habeas relief was affirmed by the Tenth Circuit Court of Appeals, *see Hancock v. Trammell*, 798 F.3d 1002 (10th Cir. 2015), and a writ of certiorari was denied by the United States Supreme Court.  *See Hancock v. Duckworth*, 580 U.S. 831 (2016).

### B.    Plaintiff's Motion for DNA Testing

In 2021, Plaintiff filed a motion in the state trial court, requesting forensic DNA testing, pursuant to title 22, section 1373.2 of the Oklahoma Statutes, that he asserted would show he is innocent of the crimes for which he was convicted.  *See* Compl. ¶ 40; Defs.' Resp. Ex. 7, Pl.'s Mot. DNA Testing (Doc. No. 16-7) at 22, 33.  The trial court initially denied the motion without a hearing, but on remand from the OCCA held a hearing and then again denied the motion.  Compl. ¶¶ 41-42.  Plaintiff appealed, and the OCCA

affirmed on May 11, 2023.  *Id.* ¶ 43; *see* Pl.'s Mot. Ex. 5, OCCA Summ. Op. (Doc. No. 11-5).

Plaintiff now moves this Court for an injunction requiring Defendants to produce and release for DNA testing the following items: Mr. Lynch's fingernail scrapings; Mr. Lynch's clothing; Mr. Jett's clothing; Mr. Jett's wallet; and a letter found on a metal bar at the scene.  Plaintiff alleges that favorable DNA test results would show the presence of Plaintiff's blood and DNA on each of these items.  He argues such results would corroborate his contention that Mr. Lynch held him down in a chokehold while Mr. Jett violently attacked him with the metal bar, causing Plaintiff to shoot them both at point-blank range in an act of self-defense.  *See* Compl. ¶¶ 4-6; Pl.'s Mot. at 12.  Plaintiff further alleges that such results would undermine the State's theory of the case—i.e., that Mr. Jett retreated and it was physically impossible for Mr. Lynch to join the attack.  *See* Compl. ¶ 7.

## IV. <u>Standard of Review</u>

Plaintiff seeks a preliminary and permanent injunction authorizing his access to the evidence in Defendants' control in order for Plaintiff to conduct DNA testing upon that evidence.  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  And "the requirements for obtaining a permanent injunction are remarkably similar to those for obtaining a preliminary injunction."  *Ute Indian Tribe of the Uintah & Ouray Rsrv. v.*

*Lawrence*, 22 F.4th 892, 908 (10th Cir. 2022) (internal quotation marks omitted).  "[T]he same four elements apply to both types of injunctive relief, and the only measurable difference between the two is that a permanent injunction requires showing *actual success* on the merits, whereas a preliminary injunction requires showing a *substantial likelihood of success* on the merits." *Id.* (alteration and internal quotation marks omitted).  But "[a]n injunction can issue only if each factor is established." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022).

The decision to grant or deny injunctive relief is addressed to the equitable discretion of the Court.  *See Ute Indian Tribe*, 22 F.4th at 899; *eBay Inc. v. MercExhange, L.L.C.*, 547 U.S. 388, 391 (2006).  "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal."  *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001); *accord Denver Homeless Out Loud*, 32 F.4th at 1278.

## V.   Likelihood of Success and Actual Success on the Merits: Due Process

### A.   Applicable Law

The Due Process Clause of the Fourteenth Amendment prohibits a State from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. Plaintiff here challenges the constitutionality of Oklahoma's Postconviction DNA Act, a statute setting forth procedures for postconviction relief relating to DNA testing.  While there is no federal constitutional right for a convicted defendant to obtain evidence for postconviction DNA testing, Oklahoma has statutorily created such a right and, as a result, procedural due process requires that the state-provided

procedures be adequate to protect that substantive right.  *See Skinner*, 562 U.S. at 525; *Dist. Att'y's Office for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67-69 (2009).

To establish a procedural due process claim, Plaintiff must allege facts demonstrating (1) a deprivation by the State of a protected interest in life, liberty, or property, and (2) an inadequate state process.  *See Reed v. Goertz*, 598 U.S. 230, 236 (2023).  Plaintiff has plausibly alleged that the Postconviction DNA Act creates a liberty interest "in accessing the Oklahoma statutory procedure to conduct forensic DNA testing." Compl. ¶ 11; *see, e.g.*, *Tarver v. Kunzweiler*, No. 20-CV-0392, 2020 WL 6050572, at *5 (N.D. Okla. Oct. 13, 2020); *see also Pickens v. Kunzweiler*, No. 15-CV-504, 2016 WL 1651821, at *4 (N.D. Okla. Apr. 25, 2016) (characterizing the liberty interest created by the statute as an "interest in demonstrating innocence with new evidence").  But, as explained further below, Plaintiff has not plausibly alleged, in connection with any of his theories of deprivation of procedural due process, that the procedures provided by the State are inadequate to allow him to "realiz[e]" this liberty interest.  *Osborne*, 557 U.S. at 68.

To find the process unconstitutional, the Court must determine that the state-provided procedures "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or "transgress[] any recognized principle of fundamental fairness in operation."  *Id.* at 69 (internal quotation marks omitted).  As explained in *Osborne*, "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man."  *Id.* at 68.  Accordingly, the State has "more flexibility" in deciding what procedures are needed in the context of postconviction relief.  *Id.* at 69.  "When a State chooses to offer help to those seeking relief

from convictions, due process does not dictate the exact form such assistance must assume." *Id.* (alteration and internal quotation marks omitted). Instead, in considering a defendant's "limited interest" in postconviction relief, the question is one of fundamental fairness. *Id.*; *accord Pennsylvania v. Finley*, 481 U.S. 551, 559 (1987).

It is Plaintiff's "burden to demonstrate the inadequacy of the state-law procedures available to him in state postconviction relief." *Osborne*, 557 U.S. at 71. The Supreme Court has made clear this is a difficult burden to meet, emphasizing that "*Osborne* severely limits the federal action a state prisoner may bring for DNA testing" and "left slim room for the prisoner to show that the governing state law denies him procedural due process." *Skinner*, 562 U.S. at 525; *see also Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019). *Osborne* itself directs that "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Osborne*, 557 U.S. at 69. Additionally, "[e]very court of appeals to have applied the *Osborne* test to a state's procedure for postconviction DNA testing has upheld the constitutionality of it." *Cromartie*, 941 F.3d at 1252 (citing cases from the First, Second, Ninth, and Eleventh Circuits). Though not addressing the specific issues raised here, federal courts that have considered Oklahoma's Postconviction DNA Act have found no violation of "any recognized principle of fundamental fairness." *Huey v. Kunzweiler*, 847 F. App'x 530, 535 (10th Cir. 2021) (internal quotation marks omitted) (affirming dismissal of challenge to "reasonable probability" requirement of § 1373.4(A)(1)); *see also Tarver*, 2020 WL 6050572, at *6; *Neal v. Prater*, No. CIV-19-277, 2019 WL 6045586, at *4 (W.D. Okla. Nov. 15, 2019); *Pickens*, 2016 WL 1651821, at *4.

**B.      As-Construed Challenge: Favorability**

      **1.      No presumption of favorability**

Plaintiff first contends that the State's process for considering his DNA testing request violated fundamental fairness due to the manner in which the OCCA construed the Postconviction DNA Act's "favorable results" requirement.  The statute requires a court to order DNA testing if such court finds certain facts, including "[a] reasonable probability that the petitioner would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution."  Okla. Stat. tit. 22, § 1373.4(A)(1).[1]  Plaintiff contends the OCCA has "'authoritatively construed'" this requirement in a way that renders the substantive liberty interest meaningless, by refusing to give effect to the statutory prescription that "the most favorable hypothetical results" must be presumed, and instead presuming that "favorable results are implausible when considered in light of inculpatory evidence upon which the conviction is based."  Pl.'s Mot. at 11 (quoting *Reed*, 598 U.S. at 235); Compl. ¶ 51.  Additionally, Plaintiff contends, "a court's speculation as to the likelihood that testing *will* produce a favorable result cannot reasonably be a basis for concluding that testing that *does* produce such a result would not change the outcome of the trial."  Pl.'s Mot. at 12.

As an initial matter, Plaintiff's authority for the proposition that § 1373.4(A)(1) "plainly requires courts to assume favorable results of testing" is premised only upon other

---

[1] Such a materiality requirement "is common," as various states' statutes "recognize the value of DNA evidence but also the need for certain conditions on access to the State's evidence."  *Osborne*, 557 U.S. at 63.

states' interpretation of "similar provisions." *Id.* at 11. Further, "a state court's misapplication of state law, without more, does not violate the Federal Constitution." *Cromartie*, 941 F.3d at 1257 (citing *Snowden v. Hughes*, 321 U.S. 1, 11 (1944)). In any event, this Court concludes that the state courts applied the Postconviction DNA Act in a manner that comports with the statutory language. The trial court presumed favorable results of the requested DNA testing and then expressly weighed those exculpatory results against the inculpatory evidence presented at trial to determine if there was a reasonable probability those favorable results would undermine Plaintiff's conviction. *See* Trial Ct. Findings of Fact & Concls. of Law at 7-10. The OCCA found "no clearly erroneous deviation from or misapplication of the statutory standard." OCCA Summ. Op. at 5; *cf. State ex rel. Smith v. Neuwirth*, 337 P.3d 763, 764-66 (Okla. Crim. App. 2014) (explaining that "there must be a showing as to how [the evidence subject to DNA testing] 'if favorable' would have prevented the conviction in the first instance").

Plaintiff points to the trial court's and OCCA's decisions to argue that no postconviction DNA testing can ever take place if the statute is construed such that "the mere presence of contradictory evidence is grounds for denying DNA testing." Pl.'s Mot. at 12. But neither the trial court nor the OCCA relied on a "mere presence" of contradictory evidence. Rather, the trial court found that "[e]ven if favorable DNA results were obtained," "the evidence would not be sufficient to overcome the weight of the evidence showing that [Plaintiff's] account of self-defense was implausible." Trial Ct. Findings of Fact & Concls. of Law at 8. In making this finding, the trial court discussed the evidence presented at trial that directly contradicted Plaintiff's assertion of self-defense and the

testimony of Plaintiff's DNA expert.  *See id.* at 8-9.  The trial court determined that "there were means for [Plaintiff's] DNA to end up on the subject items outside of [Plaintiff's] account" of events.  *Id.* at 9.  The trial court concluded that because there was no proof that the DNA was likely deposited on the subject items in the specific manner related in Plaintiff's account, favorable DNA results would not have corroborated his defense at trial.  *See id.* at 10.  And the OCCA affirmed the trial court's "conclusion from the evidence," noting that the trial court had "assessed the facts that would be shown by positive DNA results in terms of a reasonable probability of a different outcome."  OCCA Summ. Op. at 3-5.  The OCCA held that "[t]he trial court's conclusion that positive DNA results from the requested testing would not undermine confidence in the outcome at trial, considered in light of the remaining evidence, is not clearly erroneous or contrary to the logic and effects of the facts presented."  *Id.* at 5.

Even if this Court were to disagree with the state trial court's assessment of the record, it is plain that the court evaluated the evidence in the manner required by the Postconviction DNA Act, including a thorough inquiry into whether there was "[a] reasonable probability that [Plaintiff] would not have been convicted if favorable results had been obtained through DNA testing at the time of the original proceeding."  Okla. Stat. tit. 22, § 1373.4(A)(1).  Plaintiff has not demonstrated that the OCCA's affirmance of that ruling authoritatively construed the Postconviction DNA Act in a way that violates fundamental fairness.

### 2.    Failure to presume fully favorable results

In addition to arguing that the OCCA has construed the Postconviction DNA Act as

not requiring courts to presume favorable results "at all," Plaintiff asserts that the Oklahoma courts did not presume a sufficiently high degree of favorability. Pl.'s Mot. at 11-12. Plaintiff asserts that the trial court "assumed only slightly favorable results, not the genuinely favorable results that [Plaintiff] alleges DNA testing will show." *Id.* at 12; *see also* Compl. ¶¶ 51, 58. To this end, Plaintiff contends if the trial court had assumed the "most favorable hypothetical result" of the requested DNA testing, Compl. ¶ 51, it would have to had assumed that significant amounts of Plaintiff's blood and DNA would be found on all of the subject items. And a significant amount of Plaintiff's blood and DNA would indicate that the material was transferred to these items as a result of a struggle rather than from mere shedding or touch. *Id.* ¶ 52 ("Far more DNA is transferred by contact with force, friction, and/or rubbing, as may be the case in a struggle, than when DNA is transferred by light touch. Greater force or friction may also be accompanied by sweat, which contains large quantities of DNA. In addition, blood transfers more DNA than skin cells. Thus, the struggle described by [Plaintiff] likely resulted in the transfer of significant blood and DNA material."); *accord* Pl.'s Reply at 3-4. Thus, Plaintiff requests that the Court conclude that due process requires the Postconviction DNA Act be construed to require that courts presume the most favorable results possible from the requested testing, and because the OCCA has construed the statute as requiring something less, the statute as construed is "fundamentally inadequate" to secure Plaintiff's state-created liberty interest. *Osborne*, 557 U.S. at 69.

Even if the Court accepts that the procedures set forth in the Postconviction DNA Act—as allegedly construed by the OCCA—require only a presumption of something less

than a fully favorable result, Plaintiff has not shown that such procedures are "inconsistent with the traditions and conscience of our people or with any recognized principle of fundamental fairness." *Id.* at 70 (internal quotation marks omitted). Under the Postconviction DNA Act, the court must assign some level of favorability in applying § 1373.4(A)(1), but "due process does not dictate" what that level must be. *Id.* at 69 (alteration and internal quotation marks omitted); *see also Finley*, 481 U.S. at 559 (explaining that "States have substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review" and rejecting the proposition "that when a State chooses to offer help to those seeking relief from convictions, the Federal Constitution dictates the exact form such assistance must assume"); *Tarver*, 2020 WL 6050572, at *6 ("[P]lacing limits on an offender's access to DNA evidence does not make Oklahoma's Postconviction DNA Act fundamentally inadequate to vindicate substantive rights." (alteration, citation, and internal quotation marks omitted)). Though the OCCA did not construe the "favorable results" provision as Plaintiff would prefer, the court's construction does not establish that the Postconviction DNA Act is constitutionally inadequate.

### C.   Facial Challenge: Use of DNA Testing to Challenge Imposition of Death Penalty Rather than the Underlying Conviction

Plaintiff also brings a facial challenge to the Postconviction DNA Act, arguing that the limitations set forth in the statute are so restrictive that they have rendered the procedures provided by Oklahoma law inadequate to protect Plaintiff's liberty interest in seeking postconviction relief through other means. More specifically, Plaintiff contends

that the restrictions undermine his ability to pursue relief under the Oklahoma Post-Conviction Procedure Act, Okla. Stat. tit. 22, §§ 1080-1089, and through executive clemency.  *See* Pl.'s Mot. at 10; Compl. ¶¶ 48, 64-65.[2]

According to Plaintiff, because these two mechanisms create a right for convicted and death-sentenced persons to obtain relief from their sentences based on new evidence, the procedures protecting that right cannot be so inadequate as to violate fundamental fairness.  Plaintiff specifically contends that, as it relates to death-sentenced persons, the Postconviction DNA Act unlawfully limits testing to proof of innocence in relation to the conviction on which the death sentence is based and fails to permit testing to challenge whether the sentence of death was properly imposed.  Thus, according to Plaintiff, because a death row prisoner cannot use the Postconviction DNA Act to obtain evidence that the death penalty should not have been imposed, the Postconviction DNA Act violates fundamental fairness.  Plaintiff argues that this violation occurs in two ways: (1) "[o]n its face, the Postconviction DNA Act does not permit DNA testing to establish that a defendant is ineligible for the death penalty"; and (2) "on its face, the Postconviction DNA Act also does not permit DNA testing to establish that one or more of the aggravating circumstances are invalid, that mitigating circumstances exist, or that the death sentence is

---

[2] The Court assumes without deciding that Plaintiff holds a cognizable liberty interest in executive clemency.  *But cf. Osborne*, 557 U.S. at 67-68 ("We have held that noncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is *entitled* as a matter of state law."); *Ward v. Province*, 283 F. App'x 615, 618 (10th Cir. 2008) ("Because there is no constitutionally protected liberty interest in parole when the grant of parole is discretionary—as it is under Oklahoma's statutory scheme—Mr. Ward has no constitutional right to consideration of commutation.").

otherwise unjust or unwarranted."  Compl. ¶¶ 62, 63; *see also* Pl.'s Mot. at 9-11.

        1.    **Standing**

Before reaching the merits of Plaintiff's facial challenge, the Court must satisfy itself that Plaintiff has standing to invoke the power of the federal courts.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  There are three requirements of Article III standing.  First, the plaintiff must suffer an injury-in-fact.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  An injury in fact is an "invasion of a legally protected interest" that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical.  *Id*.  Second, the injury must be "fairly traceable to the challenged action of the defendant," rather than to conduct of some third party not before the court.  *Id*. (alteration and internal quotation marks omitted).  Third, it must be likely that a favorable court decision will redress the injury of the plaintiff.  *Id*. at 561.  The burden to establish standing rests on the party invoking federal jurisdiction.  *Id*.

The Court concludes Plaintiff does not have standing to bring this challenge.  Here, Plaintiff's alleged injury relating to the preclusion of testing to challenge his death sentence is hypothetical.  Plaintiff requested DNA testing "to demonstrate that he acted in self-defense and is innocent of first-degree murder."  Pl.'s Mot. DNA Testing at 6.  Plaintiff was denied testing under the Postconviction DNA Act because the state courts did not find a reasonable probability that he would not have been convicted of murder in the first degree if favorable DNA results had been obtained at time of the original prosecution.  *See* Trial Ct. Findings of Fact & Concls. of Law at 11; OCCA Summ. Op. at 5.  Stated differently, Plaintiff did not request DNA testing in order to challenge the imposition of the death

penalty, and his request was not denied due to a determination that the statute does not permit testing to pursue such a challenge. Thus, Plaintiff has not alleged a concrete, actual injury as to this theory of procedural process violation. *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("[The injury-in-fact] must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical." (citations, alteration, and internal quotation marks omitted)). Nevertheless, the Court will analyze the merits of Plaintiff's challenge on the assumption that Plaintiff has standing in this respect.

## 2.     Ineligibility for or unsuitability of the death penalty

Plaintiff's first contention—that the Postconviction DNA Act does not permit DNA testing to establish that a defendant is ineligible for the death penalty—is, at the most general level, gainsaid by his own allegations. Plaintiff asserts that if the DNA evidence corroborates his story of self-defense, then the test results would "undermine [his] convictions of two counts of first degree murder," as well as his death sentence. Compl. ¶ 32. A successful challenge to the two first-degree murder convictions would necessarily invalidate the death sentence that had been imposed based upon those convictions.

Plaintiff next argues that the Postconviction DNA Act "does not provide for relief from a death sentence where DNA evidence would undermine the basis for such a sentence." Compl. ¶ 45 (citing Okla. Stat. tit. 22, § 1373.5); *see also* Pl.'s Mot. at 10. To the extent Plaintiff contends that the Postconviction DNA Act does not authorize a court to order relief from a death sentence because such relief is not identified as an available

remedy in § 1373.5, this contention is belied by the plain statutory language.  Section 1373.5(A) prescribes that, upon the receipt of favorable testing results and after holding a hearing, "the court shall . . . enter *any* order that serves the interests of justice including, *but not limited to*," various orders enumerated therein.  Okla. Stat. tit. 22, § 1373.5(A)(1)-(6) (emphasis added).

Finally, Plaintiff argues that because the Post-Conviction Procedure Act allows him to challenge his sentence, and he must be able to access DNA evidence to present such a challenge but is precluded from doing so under the Postconviction DNA Act, there is a deprivation of due process.  Compl. ¶¶ 48, 64-65; *see* Pl.'s Mot. 10-11 (citing *Gutierrez v. Saenz*, 565 F. Supp. 3d 892 (S.D. Tex. 2021), *appeal docketed*, No. 21-70009 (5th Cir. Dec. 13, 2021)). Plaintiff criticizes the interplay between the two schemes: "With one hand, Oklahoma has given [Plaintiff] the ostensible right to obtain relief from his death[]sentence based on new evidence [pursuant to the Post-Conviction Procedure Act], but with the other hand, Oklahoma [through the Postconviction DNA Act] has taken away his ability to obtain DNA testing that would provide such new evidence."  Pl.'s Mot. at 10.

In Plaintiff's cited decision, the federal district court examined Texas' DNA testing procedures, which the Texas Court of Criminal Appeals had held "d[id] not authorize testing when exculpatory results only affect the punishment received."  *Gutierrez*, 565 F. Supp. 3d at 899, 909.  The court concluded that, because Texas had also established "a procedure and substantive right" to file a second state habeas petition "based on innocence of the death penalty," Texas' application of these laws denied a defendant sentenced to death his federal procedural due process rights.  *Id.* at 910-11 ("A bar on . . . DNA testing

17

to demonstrate innocence of the death penalty renders [the statute granting the right to seek relief upon a showing of innocence of the death penalty] illusory.").

There is no suggestion in the record, however, that the State of Oklahoma has established any comparable discrete "substantive right" to seek relief based upon innocence of the death penalty—i.e., a showing that "there was no aggravating circumstance or that some other condition of eligibility had not been met." *Id.* at 910; *Sawyer v. Whitley*, 505 U.S. 333, 345 (1992). In contrast to *Gutierrez*, Oklahoma's Post-Conviction Procedure Act permits defendants who have been sentenced to death to raise in an application for postconviction relief "[o]nly" issues that:

1. Were not and could not have been raised in a direct appeal; and

2. Support a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent.

Okla. Stat. tit. 22, § 1089(C)(1)-(2).[3] Plaintiff does not address § 1089(C) or show that any right to relief afforded under that provision is improperly circumscribed by the DNA Testing Act. *Cf. Flowers v. State*, 387 P.3d 947, 948 (Okla. Crim. App. 2016) ("[T]he Postconviction DNA Act is not an additional ground for relief pursuant to the Uniform Post-Conviction Procedure Act."). Further, as noted by Defendants, discovery and supplementation of the record are potentially available to the parties in capital postconviction proceedings. *See* Okla. Stat. tit. 22, § 1089(D)(3); Okla. Crim. App. R. 9.7(D); Defs.' Resp. (Doc. No. 16) at 27. And "DNA testing is allowed under the

---

[3] Nor does the statute generally governing the available grounds for postconviction applications provide a right to relief predicated upon innocence of the death penalty. *See* Okla. Stat. tit. 22, § 1080.

Postconviction DNA Act, without the requirement of filing a motion, when both the State and the convicted person agree that post-conviction testing should be conducted." *Watson v. State*, 343 P.3d 1282, 1283 (Okla. Crim. App. 2015) (citing Okla. Stat. tit. 22, § 1373.6(A)).

The Supreme Court has held that a state's development of rules and procedures for providing postconviction access to DNA are the province of the legislatures and state courts, not that of federal courts "applying the broad parameters of the Due Process Clause." *Osborne*, 557 U.S. at 56. Whether Plaintiff (or the Court) believes the Postconviction DNA Act should allow DNA testing to challenge findings related to aggravating factors or mitigating circumstances presented to the jury at trial, or findings that otherwise undermine the suitability of the death penalty, is not dispositive as to whether Plaintiff has shown that this statute is unconstitutional. Rather, to prevail here, Plaintiff must show that "consideration of [his] claim within the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" "or transgresses any recognized principle of fundamental fairness in operation." *Osborne*, 557 U.S. at 69 (internal quotation marks omitted).

The Court finds that Plaintiff has not made such a showing, and, accordingly, the Court is restrained from interfering with the State of Oklahoma's requirement in the Postconviction DNA Act that a court shall grant a request for DNA testing only upon finding that the request was "made to demonstrate the innocence of the convicted person." Okla. Stat. tit. 22, § 1373.4(A)(2); *see Osborne*, 557 U.S. at 69 ("[O]nce a defendant has

been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears. . . . . The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief." (internal quotation marks omitted)).

### D.   Conclusion

With respect to Plaintiff's procedural due process claims, he has shown neither a likelihood of success nor actual success on the merits.

### VI.   <u>Likelihood of Success and Actual Success on the Merits: Access to Courts</u>

Plaintiff also contends, "[f]or much the same reasons," that the Postconviction DNA Act and the OCCA's construction thereof prevents him from gaining access to potentially exculpatory and mitigating evidence that could be used to obtain judicial relief and executive clemency. Pl.'s Mot. at 13. According to Plaintiff, this lack of access and testing infringes on his First and Fourteenth Amendment rights of access to the courts. *See id.*; Compl. ¶¶ 67-71.

It is well established that prisoners have a constitutional right of access to the courts that is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). As the Tenth Circuit has recognized, "conduct that unduly hinders litigation at any stage of the proceedings" can be actionable on a prisoner's denial-of-access claim. *Vreeland v. Schwartz*, 613 F. App'x 679, 683 (10th Cir. 2015) (citing *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010)). And the right of access to the courts has been defined to include "direct and collateral attacks on convictions and sentences." *Allen v. Raemisch*, 603 F. App'x 682, 684 (10th Cir. 2015) (citing *Lewis v. Casey*, 518 U.S. 343, 353-54

(1996)).  But a necessary showing on such a claim is that the prisoner has suffered an actual injury—"that is, that the defendant's actions hindered the prisoner's ability to proceed with an actual, nonfrivolous claim."  *Vreeland*, 613 F. App'x at 683 (citing *Lewis*, 518 U.S. at 351-52); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he named plaintiff must identify a nonfrivolous, arguable underlying claim." (internal quotation marks omitted)).

Plaintiff asserts that the potentially exculpatory DNA evidence could be used to challenge his conviction and death sentence in a postconviction application or to obtain executive clemency.  But even assuming these avenues for relief qualify as an underlying claim that could be "unduly hinder[ed]" by Defendants' conduct, neither of these proffered causes of action will support an access to courts claim because Plaintiff "has failed to allege an actual, nonspeculative injury."  *Vreeland*, 613 F. App'x at 683.  Plaintiff's ability to pursue these underlying efforts rests upon, at a minimum, not only obtaining access to the cited physical evidence, but also (i) successfully conducting DNA testing upon that evidence; (ii) receiving favorable testing results; and (iii) presentation of those results to obtain judicial relief or executive clemency.  Plaintiff's alleged underlying claim is therefore far too speculative and conditional to show "actual injury" from any conduct of Defendants "frustrating" that claim.  *Christopher*, 536 U.S. at 415-16 (noting that the pleading must "show that the 'arguable' nature of the underlying claim is more than hope").

In addition, because Plaintiff has not shown that the Postconviction DNA Act deprives him of procedural due process, "it follows that it does not improperly interfere with [his] right of access to the courts."  *Cromartie*, 941 F.3d at 1258 (internal quotation

marks omitted).  "That [Plaintiff] has not succeeded in obtaining potentially exculpatory evidence under the state's constitutionally adequate procedures is not a denial of his right to access the courts."  *Id.*

Accordingly, Plaintiff has shown neither a likelihood of success nor actual success on the merits of his access to courts claim.

## VII.    Likelihood of Success and Actual Success on the Merits: Cruel and Unusual Punishment

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  *Glossip v. Gross*, 576 U.S. 863, 876 (2015).  Plaintiff alleges that the Postconviction DNA Act violates the Eighth Amendment's prohibition on cruel and unusual punishment because the statute does not authorize DNA testing where the evidence "could change the outcome at capital sentencing, even if it did not also change the outcome at trial."  Compl. ¶¶ 72-73. Plaintiff contends it would violate "the most basic standards of decency" to execute a prisoner who has "viable claims of innocence and of innocence of the death penalty."  Pl.'s Mot. at 13.

Plaintiff has cited no governing authority to support this assertion, and the Court is not aware of any precedent indicating the denial of DNA testing, or the execution of a prisoner following such a denial, constitutes an Eighth Amendment violation.  *Cf. Nelson v. Preleski*, No. 3:20cv778, 2020 WL 4937991, at *9 (D. Conn. Aug. 24, 2020) ("Courts have declined to find an Eighth Amendment right to the release of evidence for DNA testing." (citing cases)).  Inasmuch as Plaintiff claims he is entitled to DNA testing to

challenge death penalty aggravators, his argument essentially seeks to constitutionalize a right to DNA testing, a notion the Supreme Court unambiguously rejected in *Osborne*.  *See Osborne*, 557 U.S. at 72 (rejecting invitation to recognize "a freestanding right to DNA evidence" under substantive due process).

Accordingly, Plaintiff has shown neither a likelihood of success nor actual success on his claim of cruel and unusual punishment.

## VIII.  Conclusion

"An injunction can issue only if each factor is established."  *Denver Homeless Out Loud*, 32 F.4th at 1277.  Having concluded that Plaintiff has failed to establish a likelihood of success or actual success on the merits of any of his legal claims, it is unnecessary to address the remaining elements necessary for injunctive relief to issue.  *See Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1299 (10th Cir. 2006).

For the foregoing reasons, Plaintiff's Motion for Preliminary and Permanent Injunction (Doc. No. 11) is DENIED.  Additionally, the hearing previously set for November 1, 2023, is STRICKEN.

IT IS SO ORDERED this 27th day of October, 2023.

CHARLES B. GOODWIN
United States District Judge